**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| Dacia Gainer, | ) | |
| | ) | Civil Action No.: 9:19-cv-01618-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Andrew M. Saul, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Dacia Gainer filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Plaintiff's claim for child's insurance benefits (CIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, respectively. (ECF Nos. 1, 10-6 at 2, 14.)

The matter is before the court for review of the Magistrate Judge's Report and Recommendation issued in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a) (D.S.C.). (ECF No. 16.) Specifically, on January 28, 2021, the Magistrate Judge recommended that the court affirm the Commissioner's final decision denying Plaintiff's claim for CIB and SSI benefits. (*Id.* at 25.) For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation and **AFFIRMS** the final decision of the Commissioner.

## I.     BACKGROUND

The facts of this matter are discussed extensively in the Report and Recommendation. (*See* ECF No. 16 at 1–12.) The court concludes, upon its own careful review of the record, that the

Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein facts that are pertinent to the analysis of Plaintiff's claims.

On July 17, 2015, Plaintiff filed an application for SSI benefits under Title XVI of the Social Security Act. (ECF No. 10-6 at 2.) Further, on November 16, 2017, she applied for CIB under Title II of the Social Security Act. (ECF No. 10-6 at 14.) In both applications, Plaintiff alleged that she became disabled on October 9, 2012. (*Id.* at 2, 14.)

On June 12, 2018, an Administrative Law Judge ("ALJ") issued a decision determining that Plaintiff had not been under a disability as defined by the Social Security Act since October 9, 2012. (ECF No. 10-2 at 18.) The ALJ did find that Plaintiff had severe impairments, including "bipolar disorder; major depressive disorder; anxiety disorder; post-traumatic stress disorder; borderline personality disorder; fibromyalgia; hypothyroidism; obstructive sleep apnea; and obesity." (*Id*. at 20.) However, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that me[]t[] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (ECF No. 10-2 at 24.) The ALJ found that Plaintiff "ha[d] the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no climbing ladders, ropes, or scaffolds; no exposure to temperature extremes or hazards; . . . [and] c[ould] have no contact with public . . . ." (ECF No. 10-2 at 30.) Furthermore, the ALJ observed that there were "jobs that exist in significant numbers in the national economy" that Plaintiff could perform to include laundry laborer, wrapping machine operator, and paperboard box maker. (*Id*. at 33.) On or about August 7, 2018, Plaintiff requested a review of the ALJ's decision by the Social Security Administration's Appeals Council, which request was denied on April 12, 2019. (ECF No. 10-2 at 2–7.)

Thereafter, Plaintiff initiated the instant action in this court on June 5, 2019, against the Commissioner.  (ECF No. 1.)  On January 28, 2021, the Magistrate Judge issued the aforementioned Report recommending that the court affirm the Commissioner's decision to deny Plaintiff's application for CIB and SSI benefits.  (ECF No. 16 at 25.)

## II.    LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to for clear error, including those portions to which only "general and conclusory" objections have been made.  *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision if it is supported by

3

substantial evidence. *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Id.* "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58. This court adheres to that responsibility and considers the record, the Report, and any objections in this case.

### III.    ANALYSIS

A.    The Magistrate Judge's Review

In the Report, the Magistrate Judge addressed Plaintiff's sole complaint that the ALJ's decision improperly rejected the opinions provided by Plaintiff's counselor JoAnn Smith and by physician's assistant, Jason Flassing. (*See* ECF No. 16 at 16, 20–21 (referencing ECF No. 12 at 27–31).) Plaintiff particularly relies on Flassing and Smith in support of her benefits claims because they opined that Plaintiff was essentially unable to work in any capacity. (*See* ECF No. 10-23 at 3–6.) However, the Magistrate Judge explained in the Report that Social Security regulations distinguish between "acceptable medical sources" and "other sources," and, in this instance, the opinions of Smith and Flassing are properly considered "other sources." (*Id.* at 21 ("Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers, including physician's assistants, are considered 'other sources.'" (citing 20 C.F.R. §§ 404.1502, 416.902; SSR 06-03p)).) To this point, the Magistrate Judge observed that the ALJ was required to explain the weight given to these "other sources"

using factors listed in 20 C.F.R. § 404.1527(c),[1] and the Report's ultimate conclusion was that "the

---

[1] 20 C.F.R. § 404.1527(c) provides as follows:

(c) *How we weigh medical opinions*. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion. (1) *Examining relationship*. Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you. (2) *Treatment relationship*. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion. (i) *Length of the treatment relationship and the frequency of examination*. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source. (ii) *Nature and extent of the treatment relationship*. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's medical opinion more weight than we would give it if it were from a nontreating source. (3) *Supportability*. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend

ALJ's explanation satisfie[d] this standard." (ECF No. 16 at 22.) As a result, the Magistrate Judge found that "the ALJ's decision to accord little weight to the opinions of Mr. Flassing and Ms. Smith was supported by substantial evidence" and "the record contains substantial evidence to support the conclusion that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period." (*Id.* at 21, 25.)

B.    No Objections by Plaintiff

The Magistrate Judge advised the parties of their right to file specific written objections to the Report within fourteen (14) days of the date of service or by February 11, 2021. (ECF No. 16 at 26 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)).) However, neither party filed any objection before the deadline.

In the absence of a timely objection to the Magistrate Judge's Report, the court is not required to provide an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting an advisory committee note on Fed. R.

---

on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources. (4) *Consistency*. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion. (5) *Specialization*. We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist. (6) *Other factors*. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. . . .

20 C.F.R. § 404.1527(c).

Civ. P. 72). Furthermore, failure to file specific written objections to the Report results in a party's waiver of the right to appeal from the judgment of the District Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985).

The court conducted a thorough review of the Report and record in this case. The court found the circumstances of Plaintiff's life unfortunate, but nevertheless must conclude that the Report provides an accurate summary of the facts and law and does not contain any clear error. Therefore, the court **ACCEPTS** the Report (ECF No. 16), and **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for child's insurance benefits and supplemental security income.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

February 25, 2021
Columbia, South Carolina